MORSE (GASSETT v.). See Case No. 5,264.

## Case No. 9,856.

### MORSE v. GODFREY et al.

[3 Story, 364.] [1]

Circuit Court, D. Massachusetts. May Term, 1844.

BANKRUPTCY—FRAUDULENT PREFERENCE — MORTGAGE—ASSIGNMENT—NOTICE—BONA FIDE PURCHASER.

1. Where A mortgaged to B the whole of his stock in trade, and nearly all of his real estate, to secure a debt due from A to B, and on the same day, made oath to a petition for the benefit of the bankrupt act [of 1841 (5 Stat. 440)], and subsequently B assigned to the Cohannet Bank and others all his right, title and interest in the said stock and in the said real estate; it was *held*, that the mortgages were "in contemplation of bankruptcy," within the meaning of the bankrupt act of 1841, c. 9, and were therefore void.

[Cited in Clarke v. White, 12 Pet. (37 U. S.) 199; Everett v. Stone, Case No. 4,577; Ashby v. Steere, Id. 576; Rison v. Knapp, Id. 11,861.]

[Cited in Milton v. Boyd, 49 N. J. Eq. 154, 22 Atl. 1083; Work v. Jacobs, 35 Neb. 779, 53 N. W. 995.]

[See Ashby v. Steere, Case No. 576.]

2. It was immaterial whether B did or did not know that a fraudulent preference was intended in his favor, if it were actually given.

3. Inasmuch as the bank had notice at the time when the assignment was made that A had failed, and only took it as collateral security for old claims upon B, it was not a bona fide purchase for a valuable consideration, without notice.

[Cited in Gest v. Packwood, 34 Fed. 368.]

[Cited in Linnard's Appeal (Pa. Sup.) 3 Atl. 841.]

[1] [Reported by William W. Story, Esq.]

4. As the assignment by B was merely of his right, title, and interest, without covenant of title, the invalidity of his title destroyed all right of the bank.

[Cited in Rodgers v. Burchard, 34 Tex. 441.]

5. To constitute a bona fide purchaser for a valuable consideration, the sale must be for a new consideration; and the transfer of property merely as a new security for old debts and liabilities, without extinguishment or surrender of such debts, or of the old securities therefor, is not sufficient.

[Cited in Rison v. Knapp, Case No. 11,861; People's Sav. Bank v. Bates, 120 U. S. 565, 7 Sup. Ct. 683; Franklin Sav. Bank v. Taylor, 4 C. C. A. 55, 53 Fed. 863.]

[Cited in Busenbarke v. Ramsey, 53 Ind. 503; Linnard's Appeal (Pa. Sup.) 3 Atl. 841.]

6. The pendency of proceedings in bankruptcy is sufficient constructive notice to all grantees of property proceeding from the bankrupt.

[Cited in Re Wallace, Case No. 17,094.]

Bill in equity. The bill in substance stated: "That on the nineteenth day of March last, the said William Reed resided and did business in said Taunton, as a merchant or trader, and was then possessed of and entitled to certain real and personal estates of great value, and was indebted to sundry persons in large sums of money, exceeding in amount the value of his estates, and was insolvent, and in failing circumstances, and unable to meet his debts and engagements, as he the said William Reed then fully apprehended and knew; that the said William Reed was then indebted to the said Charles Godfrey in divers sums of money, and the said Godfrey was or pretended to be liable to pay as indorser, surety, or otherwise for the accommodation of said William Reed certain other sums of money; and that the said William Reed, on the said nineteenth day of March, being in contemplation of bankruptcy, and with the intent and for the purpose of giving to the said Godfrey a preference or priority over his general creditors, executed, acknowledged, and delivered to the said Godfrey, without any consideration, a certain deed, purporting to convey to him all the right, title, and interest which the said Reed had in and to any lands, buildings, and real estate in the county of Bristol, in said district, upon condition that the same should be void if the said William Reed, his heirs, executors, or administrators, should pay to the said Godfrey the amount justly due to him from said Reed on account, and should save him harmless and indemnified against all liabilities on account of his being indorser, surety, or acceptor for the accommodation of the said Reed; which said deed was recorded in the registry of deeds for the county of Bristol, on the same day. And on the same day, and at the same time, and with like intent and purpose, the said Reed made and executed to the said Godfrey a certain other deed, or bill of sale, purporting to sell and transfer to the said Godfrey all the goods, wares, and merchandise then being in the store occupied by him, on the southerly side of the Main street in said Taunton, upon a like condition, which said deed or bill of sale was on the same day recorded in the clerk's office of the said town of Taunton. That on the same nineteenth day of March, the said William Reed filed his petition in bankruptcy, and was afterwards declared to be bankrupt, and the plaintiff [Lovett Morse] was appointed assignee of his estates. That on the twenty-first day of March last, the said Godfrey made and executed a certain deed, or bill of sale purporting to transfer unto the said president, directors, and company of the Cohannet Bank, all his right, title, and interest in and to the said goods, wares, and merchandise so pretended to have been transferred to him by the said William Reed, conditioned to be void upon payment by the said Godfrey or Reed to the said president, directors, and company, of the principal and interest due and to accrue upon certain promissory notes described therein, made and signed by the said Reed, and indorsed by said Godfrey, which was, on the twenty-second day of March last, recorded in the clerk's office of said town of Taunton. That on the twenty-sixth day of May last, the said Godfrey made and executed a certain other deed, purporting to sell, assign, and transfer, unto the president, directors, and company, the said Institution for Savings, Samuel Blake, Samuel Caswell, Benjamin Caswell, Charles Johnson, Abigail Leonard, and Walter Leonard, all his right, title, and interest in and to the said goods, wares, and merchandise mentioned in said deed of mortgage, and the proceeds thereof, and all claims and demands, or causes of action which he had at law, or in equity, against the said William Reed, and one John Reed, or either of them, and all claims and demands which might accrue to him by reason of any liabilities he was under for them, or either of them, and appointed the said grantees his attornies to collect the same; and on the same twenty-sixth day of May the said Godfrey executed and delivered to the same corporations and persons, a certain other deed, purporting to grant and convey unto them, all the right, title, interest, and estate, which he acquired in and to all and singular, the lands, tenements, and real estate of the same William Reed, by virtue of the deed of mortgage bearing date the said nineteenth day of March, hereinbefore referred to, which deed was acknowledged by said Godfrey on the thirtieth day of May last, and on the same day recorded in the registry of deeds for said county of Bristol. That the said defendants, or some of them, have taken possession of all the goods, wares, and merchandise, being in the store of the said William Reed at the time of the making of the said deeds of mortgage by him, the same being of great value, and have, as your orator is informed, sold and disposed of the same to divers persons to him unknown, and at prices greatly below its cost and actual value, and have received the proceeds thereof, without any right or authority on their

part to make any sale or disposal thereof; and that on the seventh day of June last, the said corporations, and the said Blake, Caswell, Caswell, Johnson, Leonard, and Leonard, took possession of all the lands and tenements, and real estate of the said William Reed, situate in said county of Bristol, and have since been in receipt of the rents and profits thereof, and have received large sums of money as such, the said defendants claiming title to the said real and personal estates under and by virtue of the said deeds of mortgage made by said Reed, and of the assignments thereof made by the said Godfrey as aforesaid. That when the said William Reed made and delivered the said deeds of mortgage, on the nineteenth day of March last, he was insolvent, and unable to meet his debts and engagements, and that he was fully aware thereof; and that the said Godfrey knew thereof, or had reasonable cause to believe the same; and that the said William Reed contemplated bankruptcy; and that said deeds of ·mortgage were made and delivered in contemplation of bankruptcy, and for the purpose of giving the said Godfrey a preference or priority over the general creditors of the said William Reed, and that the said deeds are, and each of them is void, and frauds upon the said act of congress. That he has been informed, and believes it to be true, that no consideration was paid to the said Godfrey upon the execution and delivery of the said several deeds of assignment hereinbefore mentioned, by the grantees therein named, or any of them, and that the same were, and each of them was made without consideration; and that the said grantees knew that the said William Reed had, before the execution and delivery thereof, filed his petition to be declared a bankrupt, and knew, or might have known, the time when, and the circumstances under which the said deeds of mortgage were made and executed, and that the same were made in contemplation of bankruptcy, and for the sake of giving a preference or priority, and were void and frauds upon said act of congress. That if the said deeds of mortgage were valid and effectual to convey and transfer to the said Godfrey the real and personal estates therein mentioned, that the plaintiff is entitled to redeem the same, and perform the conditions therein contained, and is entitled to receive of the said Godfrey, or his assigns, a true account of all the sums of money due or owing to him from said William Reed, intended to be secured by said deeds of mortgage, and of all the liabilities under which the said Godfrey labored in behalf of said Reed, and against which he was to be indemnified thereby, remaining unpaid or unextinguished, and of all sums of money paid by said Godfrey on account thereof—and of all sums of money received by him or his assigns, being rents and profits of the said real estates, and to have the said personal estates transferred or delivered to him, or their actual value in money paid to him, and to have the said mortgage upon the real estates cancelled and delivered up upon performance by him of the conditions in said deeds of mortgage expressed. And the plaintiff hoped, that when, by virtue of his appointment as aforesaid, all the property, and rights of property, of the said bankrupt were vested in him, the said defendants would relinquish all claim to the said real estates, and cancel the mortgage thereon, and account for the rents and profits thereof, and deliver over the said personal estates, or their equivalent in money. But that the said defendants, though requested, refuse so to do, and claim an adverse interest in the said real and personal estates of the said bankrupt, which are by law now vested in your orator. Whereupon the plaintiff respectfully prays your honors to decree, that the said pretended deeds of mortgage are null and void, and a fraud upon the said act of congress, and wholly ineffectual to pass to the said Charles Godfrey any title or interest in or to all or any of the real or personal estates therein mentioned or referred to, and that the other persons named as defendants herein, have no title or interest therein by virtue of the said deeds of assignment, and that the plaintiff is entitled to receive from all of the said defendants a deed of release of all their interest in and to said real estates, or to have a discharge of the said deed of mortgage entered upon the record thereof in the said registry of deeds, and to an account and payment of all and singular the sums of money received by them as the rents and profits thereof, and to the payment by the said defendants to him of the sum of six thousand seven hundred and thirty-three dollars and four cents, being the actual value of the said personal estates mentioned or referred to in said other deed of mortgage, and sold or disposed of by said defendants as aforesaid."

Godfrey, in his answer, states as follows: "That on the nineteenth day of March last past, William Reed, of said Taunton, trader, was indebted to him in the sum of sixty dollars and eighty-three cents, as nearly as he can ascertain,—and he had before that time been and become indorser, surety, and otherwise liable for said Reed, in and upon certain promissory notes then held by his several co-defendants in the complainant's said bill named. That on or about the first day of January next preceding, the said William Reed had, as he informed the defendant, taken an account of his stock in trade, and property, personal and real, and of his indebtedness and liabilities of every description, and ascertained that his said property was more than sufficient to pay all his said debts and liabilities, and the defendant relied thereon. And the defendant further answering says, that a short time prior to said nineteenth day of March, he was advised to endeavor to protect or secure himself against loss from the indebtedness of said Reed to him, and from

his liabilities for said Reed; and thereupon, to avoid all possible loss that might thereafter arise to him, by reason of the said indebtedness of said Reed to him, and his said liabilities for said Reed, he did, on said nineteenth day of March, call upon said Reed, in company with counsel learned in the law, and demand and require of the said Reed to secure him from any eventual loss by reason of his said claim and liabilities, by a mortgage upon his stock in trade and real estate; and said Reed did then and there, after some hesitation and delay, yield to said demand and requisition. Whereupon a deed of mortgage of said Reed's stock in trade, and another deed of mortgage of the lands and tenements of said Reed, were, on said nineteenth day of March, duly made and executed by said Reed to the defendant. That the sum named in said deeds as the consideration therefor, was, as he believes, inserted therein by the counsel who drew said deeds, as being about the supposed amount of the debt due the defendant and of his said liabilities for said Reed; but neither said sum, nor any other sum of money, was paid by the defendant to said Reed on the execution and delivery of said deeds as the consideration therefor, but that the sole consideration therefor was the said indebtedness of said Reed to the defendant, and the defendant's liabilities for said Reed as aforesaid. That at the time of his demanding security of said Reed in manner aforesaid, he was led to fear that said Reed was, or would be troubled, and unable to meet and pay the sums due from him from time to time as the same fell due, but this defendant did believe that unless the said Reed should be compelled to submit to a sale of his stock in trade at a less than its prime cost, and to a sale of his interest in said real estate at less than what had theretofore been considered its true value, he, said Reed, would not prove, ultimately, unable to pay his debts. And this defendant denies that when said deeds of mortgage were so made to him as aforesaid, said Reed, so far as he knows, is informed or believes, contemplated stopping his said trade or business, or filing a petition in bankruptcy,— on the contrary, the defendant, at the time of the execution of said mortgages, expressly understood and believed that said Reed did not intend to stop his said business or to be declared a bankrupt. That he is informed, and believes it to be true, that said Reed, after the execution and delivery of said mortgages on the same nineteenth day of March, was informed that his property, real and personal, had been attached by several of his creditors, and then and thereupon, and by reason thereof, said Reed was induced to believe that he would not be able to prosecute his said business, and did, in consequence thereof, apply to counsel to draw a petition pursuant to said act, that he, the said Reed, might be declared bankrupt, which said petition the defendant has been informed and

believes was signed and sworn to by said Reed on said nineteenth day of March, and that thereafterwards the same was, as this defendant is informed, duly filed in court on the twenty-first day of said March, and said Reed declared bankrupt, and said complainant duly appointed assignee of his estate and effects at the time and in the manner in said bill set forth, and that said complainant accepted and now exercises said trust. And this defendant further says, that on the twenty-first day of said March, the president, and company of the Cohannet Bank, one of the defendants to this bill, being the proprietors and holders of six several promissory notes of said Reed indorsed by the defendant, to indemnify the defendant against which, and all loss thereon, said mortgages of said Reed to the defendant were given as aforesaid, he, the defendant, did, on said twenty-first day of March, duly assign and convey to said bank in mortgage, all his right and interest in said mortgage of goods and chattels so made to him by said Reed, to be held by said bank as security for this defendant's liability on said notes to said bank. That on the twenty-sixth day of May, in the same year, the Institution for Savings in the town of Taunton and its vicinity, Samuel Blake, Samuel Caswell, Benjamin Caswell, Charles Johnson, Walter Leonard, and Abigail Leonard, who are made defendants to complainant's bill, were the proprietors and holders of the residue of said promissory notes, and the property of the defendant having been attached by several of said persons in suits founded on the defendant's liability on said notes, and at the request of said bank and of said other parties, defendants hereto, and as security for the defendant's said liabilities to them on said notes, the defendant did, on the said twenty-sixth day of May, make and execute and deliver to all said parties, a conveyance of all his interest in said real estate so mortgaged by said Reed to this defendant, and for the same purpose and at the same time did assign all his interest in the said personal property so conveyed to him in mortgage by said Reed, (and by this defendant theretofore conveyed in mortgage to said bank as aforesaid), and did also by the same instrument assign to said parties all his rights and claims against said William Reed, and against one John Reed. And said parties, on the same day, and as part of the same transaction, did execute with this defendant a written agreement, in and by which agreement said mortgage of said goods and chattels so assigned to said bank and the proceeds thereof, was declared and agreed to be held by said bank, —and also said mortgage of said real estate, and said claims and the proceeds thereof as security, and to be applied and distributed to and among said bank and said other parties equally and in proportion to their respective claims aforesaid against this defendant. And that neither said bank nor said other persons nor corporations, grantees in said

deeds at the time of the execution and delivery of said deeds respectively, or at any other time, paid to this defendant any sum or sums of money as a consideration therefor. And that he is informed and believes that said bank, on or about the twenty-first day of March, did take possession of said goods and chattels, and that the same have been sold and disposed of; and as to the places where and times when the same were so. sold, and as to prices and manner of such disposition and sales, and the proceeds thereof, this defendant says that he has seen and read, or heard, the answer of said bank filed in this case, and that the same is, so far as this defendant knows and is informed, correctly and fully set forth therein. That he is informed and believes that the said bank and the said other defendants, on or about the seventh day of June last, did enter upon and take possession of said real estate for condition broken, and that they have received certain rents and profits therefrom. And although this defendant cannot answer as to his personal knowledge, yet he has read or heard the answers of said bank and of said other defendants, filed in this case, and the statement therein contained in relation to said rents and profits, and in relation to the use and application of the same, and of the proceeds of said goods and chattels, is, according to his best knowledge and belief, true. And the defendant further says, that he has not, nor has ever had, any securities or means of payment and discharge of his said claims and liabilities for said Reed, furnished to him by said Reed, other than said mortgages so made and executed to him on said nineteenth day of March; and that he, this defendant, has paid on account of his said liabilities for said Reed, no other sum than the sum of eighty-two dollars and thirty cents, paid by this defendant for costs of certain suits brought against him, founded on his said liabilities for said Reed, saving and excepting such sums as have been realized by said other defendants out of the mortgages by this defendant assigned to them as aforesaid. And this defendant further answering says, that said assignment so made by him to said bank on said twenty-first day of March, is, by this defendant, supposed to be still in force and effect. And this defendant further answering says, that neither at the time of the execution and delivery of said other deeds of assignment bearing date said twenty-sixth day of May, by this defendant to said other defendants, nor at any other time, was it agreed or understood that said assignment so made by this defendant to said bank, should be, or was, revoked or annulled; nor was any agreement or writing ever made or executed by this defendant, nor by said other defendants, so far as he knows, or is informed to that effect."

The answer also of the Cohannet Bank was as follows:

"That on the twenty-first day of March, now last past, one Charles Godfrey, of Taunton, in said district, trader, was, or pretended to be, the proprietor, and possessed of said goods, in mortgage, under and by virtue of a certain deed of conveyance thereof theretofore executed to said Godfrey, by one William Reed, of said Taunton, trader, bearing date the nineteenth day of the same month of March, which deed of conveyance had been theretofore, on said nineteenth day of March, duly recorded in the office and records of the town clerk of said Taunton, where the said Reed then, and has ever since, resided, pursuant to the laws of said commonwealth of Massachusetts regulating mortgages of personal property in said commonwealth. And the said Godfrey then and there held, or pretended to hold, in good faith, said goods and chattels in mortgage, and said conveyance thereof, free from all fraud or impeachment whatever. And said Godfrey was on the same twenty-first day of March, indebted or liable to this defendant, as indorser of certain promissory notes, signed by said William Reed, amounting together to the sum of three thousand two hundred and ninety-five dollars. And this defendant, believing that the said Godfrey was in good faith the owner and holder of said goods and chattels, in mortgage, and that said recorded conveyance thereof was made fairly and without fraud of any kind, on the same twenty-first day of March, agreed with said Godfrey to take and receive an assignment and conveyance of said mortgage, and of said goods and chattels, in mortgage, and as security for the debts and liabilities of said Godfrey to said defendant, as indorser of said promissory notes,—which assignment was accordingly made and executed and delivered on said twenty-first day of March, by said Godfrey, to this defendant. That at the time said conveyance of said Godfrey to this defendant bears date, and was executed and delivered, said promissory notes, so indorsed by said Godfrey, were wholly unpaid. And this defendant doth also aver, that at or before the execution and delivery of said conveyance by said Godfrey to said defendant, this defendant had no notice whatever, that said deed of mortgage, so made by said Reed to said Godfrey, was made by said Reed in contemplation of bankruptcy, and for the sake of giving a preference or priority to said Godfrey, or that the same was void, or a fraud on the act of congress entitled an 'Act to establish a uniform system of bankruptcy throughout the United States,' or that the same was, or was believed to be, in any other manner or for any other cause, fraudulent, voidable, or void. And the defendant insists, that it is a bona fide purchase of said goods and chattels, in mortgage, as aforesaid, for a good and valuable consideration, and without any notice that the same had been conveyed in mortgage to said Godfrey, in contemplation of bankruptcy, and for the sake of giving a priority to said Godfrey, or that the same can

or could in any manner be deemed a fraud on said act of congress, or voidable or void on any ground. And the defendant admits, that at the time of the execution and delivery of said conveyance by said Godfrey to this defendant, this defendant paid said Godfrey no sum or sums of money as the consideration therefor. And the defendant denies that said conveyance, so made by said Godfrey to this defendant, was without consideration, or that this defendant, at the time of the execution or delivery thereof, knew that said Reed had before that time filed his petition to be declared a bankrupt. And the defendant admits, that he knew, from the date of said deed of mortgage by said William Reed to said Godfrey, and from the time of recording the same, as appeared on said deed and record, that the same was made, executed, and delivered on or prior to said nineteenth day of March; and was also informed, and believes, that the same was so executed on said nineteenth day of March; and this defendant denies that it knew or was informed, at or before the said assignment thereof to this defendant, of the circumstances under which the same was made and executed by said Reed to said Godfrey, except that the same was given to the said Godfrey as security for his said claims against, and liabilities for, said Reed. That on the twenty-sixth day of May, now last past, the said Godfrey was or pretended to be, seized in fee and in mortgage of and in all and singular said lands and tenements in said bill mentioned and described, under and by virtue of a certain conveyance thereof, theretofore executed by the said William Reed, bearing date the said nineteenth day of March last past. And the said Godfrey pretended to hold, in good faith, said lands and tenements in fee and in mortgage, free from all fraud and impeachment whatever. And the said Godfrey, on said twenty-sixth day of May, was indebted or liable to this defendant, as indorser of said promissory notes, signed by said Reed; and said Godfrey was, as this defendant was informed, and believed, and still believes, justly indebted or liable to said other defendants, as indorser or joint promissor with said Reed of sundry promissory notes, signed by said Reed, amounting together to the sum of four thousand nine hundred and fifty-five dollars. And this defendant, believing that said Godfrey was in good faith seized of said lands and tenements, in fee and in mortgage, and that said recorded conveyance thereof, so appearing to be made by said Reed to said Godfrey, was made fairly and without fraud of any description, nor subject to any impeachment or suspicion thereof, thereafterwards, on the said twenty-sixth day of May, did together with said other defendants, creditors of said Godfrey as aforesaid, agree to take and receive of said Godfrey an assignment and conveyance of said mortgage lands and tenements and of the said Godfrey's rights therein, and thereby secured as aforesaid, as

security for the said debts and liabilities of said Godfrey to this defendant, and to said other defendants in said bill of complaint mentioned. And thereupon a certain deed of conveyance of said lands and tenements, bearing date the said twenty-sixth day of May, was duly made and executed and delivered on the said twenty-sixth day of May, by said Godfrey to this defendant, and said other defendants, whereby said Godfrey did convey to this defendant and said other defendants all the right, title, and interest that he, said Godfrey, had in and to said real estate, lands, and tenements, under and by virtue of the said deed of said William Reed, to him, said Godfrey, so executed, on said nineteenth day of said March, and in and by said deed or conveyance the said Godfrey did covenant with this defendant, and said other defendants, their heirs, successors, executors, administrators, and assigns, that he had good right to transfer and convey said premises and property to all said grantees, in manner as aforesaid. And on the same day, for the same consideration, and as a part of the same transaction, the said Godfrey did, by his certain other deed, bearing date the said twenty-sixth day of May, assign and transfer to the same grantees, all his interest in and to the said goods and chattels, theretofore by said Reed conveyed to him in mortgage, and by him assigned and conveyed to this defendant as aforesaid, and in and to all claims and demands which he had or might have against the said William Reed, and one John Reed, of said Taunton, or either of them, arising out of his liabilities or indorsements for or on account of said John and William Reed, or either of them. And on the same twenty-sixth day of May, a certain agreement, bearing date the said twenty-sixth day of May, was duly executed and delivered under the hands and seals of Godfrey and this defendant, and said other defendants, wherein and whereby, among other things, the said mortgage of said lands and tenements, real estate, and property, and the interest of said Godfrey in and to said goods and chattels, are conveyed to said grantees as security for the said debts and liabilities of said Godfrey to said grantees, and that the same were to be sold and applied accordingly, whereby this defendant also covenanted and agreed, that said goods and chattels and mortgage to this defendant, theretofore assigned and conveyed, on said twenty-first day of March, as aforesaid, and the proceeds thereof, should be held, applied, and distributed equally among and between this defendant and said other defendants, in proportion to their respective demands and claims, as aforesaid. And that at the time of the date, execution, and delivery of said conveyance, by said Godfrey to this defendant and said other defendants, of said real estate, lands, and tenements, said promissory notes, so held by this defendant, were wholly unpaid, and as this defendant is informed and believes, said

amount, so due to said other defendants, was wholly unpaid; and this defendant doth also aver, that at or before the execution and delivery of said conveyance by said Godfrey to this defendant, and said other defendants, this defendant had not, nor had said other defendants, or either of them, so far as this defendant knew, was informed, or believed, or as he now knows, is informed, or believes, any notice whatsoever, that said conveyance or mortgage of said estate and lands, so made by said William Reed to said Godfrey, on said nineteenth day of March, was made by said Reed in contemplation of bankruptcy, and for the sake of giving a preference or priority to said Godfrey, or that the same was void. And this defendant submits, that it is, together with said other defendants, a bona fide purchaser of said mortgage of said real estate, lands, and tenements, for a good and valuable consideration, and without any notice that the said mortgage was voidable, or void, on any ground.

"And this defendant admits, that at the time of the execution and delivery of said conveyance of said real estate, neither this defendant nor said other defendants, as far as this defendant knows, is informed, or believes, paid said Godfrey any sum or sums of money as the consideration therefor; but this defendant avers the same to have been made on good and valuable consideration, as hereinbefore set forth. And this defendant admits, that at the time of the execution and delivery of said conveyance by said Godfrey to this and said other defendants, it was informed and believed, that said William Reed had before that time filed his petition to be declared a bankrupt. And this defendant, further answering, admits that it knew and believes the said other defendants knew, at the time of the assignment and conveyance of said mortgage to it and said other defendants, as well from the date of said instrument, and of the record thereof, as from other information, that the same was made and executed on said nineteenth day of March. But this defendant denies, that at or before the assignment and conveyance of said mortgage to this and said other defendants, it knew or was informed, or that said other defendants knew or were informed, so far as this defendant is informed, or believes, the circumstances under which said mortgage was made by said Reed to said Godfrey, except that the same was given to said Godfrey as security for his said claims against, and liabilities for, said Reed. That said deeds of mortgage, so made by said William Reed to said Godfrey, were expressed therein to be, and were made for the purpose of securing to said Godfrey whatever was due from said Reed to said Godfrey on account, and to indemnify and save harmless the said Godfrey from all damage, cost, charge, and trouble, for and on account of the liabilities of said Godfrey, as surety or indorser for said Reed; and on all acceptances made theretofore by said God-

frey for the accommodation of said Reed. That on said nineteenth day of March, said Reed was, as this defendant is informed, and believes, indebted to said Godfrey on account in the sum of sixty dollars and eighty-three cents, and the said Godfrey was then and there under liabilities to this defendant for and on account of the said Reed, as indorser of his, said Reed's, promissory notes, in the sum of three thousand two hundred and ninety-five dollars. And said Godfrey was also then and there, as this defendant is informed and believes, under liabilities to said other defendants, as indorser, joint promissor, surety, or otherwise, for said Reed, in the respective sums, and upon the respective contracts. That on the said twenty-first day of March, one of the said notes, so indorsed by said Godfrey for the said Reed, bearing date the seventeenth day of January, last past, for the sum of eight hundred and fifty dollars, became due and payable, which said note was then and there the property of this defendant; and payment was duly demanded by this defendant of said Reed, who declined to pay the same; and thereupon due notice was on the same day given by this defendant to said Godfrey, and said Godfrey requested to pay the same, and suits had been instituted against said Godfrey, founded on his said liabilities for said Reed; and thereupon and after the said assignment and conveyance by said Godfrey to this defendant of said mortgage of goods and chattels, so made to said Godfrey by said Reed, on said nineteenth day of March, as aforesaid, this defendant took possession of said goods and chattels; and this defendant, with the consent of said Reed, in order to avoid the loss and injury that might otherwise arise from keeping said goods, and the depreciation thereof, did empower said Reed to sell said goods and chattels by retail, and at private sale, for the benefit, and as agent of, this defendant, as the holder of said mortgage so made thereof by said Reed, this defendant agreeing to allow said Reed a reasonable sum for his services and expenses therein. And said Reed did thenceforth, until on or about the first day of June then next, proceed to sell and dispose of said goods as aforesaid, and did receive therefor for this defendant the sum of one thousand and sixty-five dollars and forty-one cents, being on the average the prime cost of said goods, as this defendant is informed and believes. And this defendant did allow and pay said Reed for his said services and expenses during said period, the sum of one hundred and eighty dollars, and after the said first day of June then next, and after the expiration of more than sixty days from the period when said suits had been brought against said Godfrey, founded on said liabilities; and when said note of said Reed, indorsed by said Godfrey, for the sum of eight hundred and fifty dollars, became due, and payment thereof was declined and refused by said Reed, this defend-

ant, with the consent of said other defendants, for whose benefit, as well as its own, said mortgage was then held by this defendant, did in the belief, as well that the residue of said stock would be most advantageously disposed of at public auction, and with least pecuniary loss, as in the exercise of what it considered, and now considers, its legal rights, proceed to sell and dispose of said stock at public auction, and in different parcels, in the towns of Taunton, Fall River, and New Bedford, in said district; and did receive, as the net proceeds of said sales, the sum of three thousand five hundred dollars and eighty-seven cents. And the defendant further says, that on the seventh day of said June, this defendant and said other defendants, did enter on, and take possession of, said real estate for condition broken, and that the sums received by this defendant, and said other defendants, as rents and profits of the real estate, since possession was so taken, amounted to forty-seven dollars and thirty-three cents, and no more. And that the sums thus received by this defendant, and said other defendants, from out the sales of said personal property, and from the rents and profits of said real estate, have been paid over and distributed, after deducting the sum of forty-two dollars and seventy-seven cents, actually expended in the sale and collections aforesaid, to and among this defendant, and all said defendants, in proportion to their respective claims aforesaid, except a small portion thereof, which amounts to less than the sum of one hundred dollars, all which sums, thus paid over and distributed among said creditors and this defendant, have been indorsed and applied towards the payment and discharge of said notes, so held by this defendant, and said other defendants, respectively. And that neither of the said liabilities of said Godfrey for said Reed, so held by this defendant, has been wholly extinguished and satisfied. Nor, as this defendant is informed and believes, has either of the liabilities of said Godfrey for said Reed, held by said other defendants, been wholly extinguished or satisfied. Nor has any part of the said liabilities, thus held by this defendant, or by said other defendants, so far as this defendant is informed, or believes, ever been diminished or paid, in part or in whole, except by the application of the said proceeds of said personal property, and rents and profits of said real estate, as aforesaid; nor has said Godfrey, so far as this defendant knows, is informed, or believes, any other securities or means given or furnished him by said Reed, for discharging said debts and liabilities. And that the said assignment and conveyance, so made to this defendant of said personal property on said twenty-first day of March, is by this defendant supposed to be in force and effect; and that it was not, as far as this defendant knows, is informed, or believes, ever supposed, understood, or agreed, that upon the execution of said deeds or assignments, bearing date the said twenty-sixth day of May, the said former assignment bearing date the twenty-first day of March, was revoked or annulled; nor was any assignment to that effect ever signed, sealed, or executed by this defendant, nor, so far as this defendant knows, is informed, or believes, by said other defendants."

The answer of the Institution for Savings was substantially the same. Afterwards Godfrey became bankrupt, and his assignee was made a party to the bill. The general replication was filed, and the cause came on for hearing upon the pleadings and evidence, and was argued by—

F. G. Loring, for plaintiff.

Mr. Bartlett, for respondents.

STORY, Circuit Justice. On the 19th of March, 1842, William Reed (the bankrupt) made the two deeds of conveyance on mortgage to Godfrey, which are now sought to be set aside as fraudulent and void, under the bankrupt act of 1841, c. 9. On the same day, Reed signed and swore to a petition for the benefit of the bankrupt act, as a voluntary bankrupt; and his petition was filed in the district court on the succeeding Monday, (the 21st of March), and has been acted upon in the district court, and Reed has since, under the same, been declared a bankrupt. One of these deeds purported to convey to Godfrey "all the right, title and interest" which he (Reed) then had "in and to any lands, buildings and real estate," in the county of Bristol. The other deed purported to convey to Godfrey, "all the goods, wares and merchandise, consisting of woollen, cotton, linen, and other cloths, silks, ribbons, laces and handkerchiefs, hose, carpetings and rugs, and various other articles of dry goods merchandise, now in the store occupied by me," and situate in Taunton. In point of fact, the last deed comprehended all his stock in trade, and the other deed nearly all his real estate, leaving him in the possession and ownership only of his furniture and some other personal property, not included in the mortgage to Godfrey. Godfrey on the same 21st of March conveyed to the Cohannet Bank, in mortgage, "all the right, title and interest," which he then had "in and to all and singular the goods, wares, and merchandise, of every name and description in the store," etc., which he derived from the mortgage to him by Reed of the 19th of March. By subsequent deeds, on the 26th of May following, Godfrey conveyed "all his right, title and interest," as well in the goods aforesaid, as in the real estate aforesaid, so conveyed to him by Reed, to the Cohannet Bank, the Institution for Savings, and to Samuel Blake, and five other persons, who were his creditors in fee, as security for their debts; and thereby on, and in consideration thereof, the said creditors on the same day by their deed agreed to withdraw and discharge their at-

tachments upon the property of Godfrey. Godfrey afterwards became a bankrupt and his assignee is made a party to the bill. The second section of the bankrupt act of 1841, c. 9, provides "that all future payments, securities, conveyances, or transfers of property, or agreements made or given by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety or other person any preference or priority over the general creditors of such bankrupt; and all other payments, securities, conveyances or transfers of property, or agreements made or given by any such bankrupt, in contemplation of bankruptcy, to any person whatsoever, not being a bona fide creditor or purchaser for a valuable consideration, without notice, shall be deemed utterly void, and a fraud upon this act."

The first and main question is, whether the conveyances so made by Reed to Godfrey come within the reach of this enactment. If they do, then another question will remain, whether the defendants claiming under Godfrey are entitled to protection, as being bonâ fide purchasers of the same for a valuable consideration, without notice. It does not strike me, that there is any substantial doubt upon the facts and circumstances resting on either point.

In the first place, nothing can be clearer than that Reed intended by the deeds in controversy to give a preference to Godfrey over all his other creditors. He conveyed to him all his stock in trade, and nearly all his real estate, leaving but a small residue, either of personal or real estate. Godfrey well knew of his embarrassments; and Reed himself admits that his whole property was about $24,000, and his debts and liabilities amounted to about the same sum. So it is plain beyond controversy, that a preference was intended to be given to Godfrey over the other creditors, in case of any deficiency; and Reed states, that he did not at the time suppose that he was able to meet all his engagements at their maturity. If it were necessary under such circumstances to rely upon authorities in confirmation of this doctrine, the cases of Harman v. Fishar, 1 Cowp. 117, 123; Thornton v. Hargreaves, 7 East, 544; Compton v. Bedford, 1 W. Bl. 362; Hooper v. Smith, Id. 441,—will be found to support it. Then, as to the conveyances being made in contemplation of bankruptcy, in the sense in which these words are used in the bankrupt act of 1841, c. 9, § 2, I have already had occasion to consider this subject in former cases, and especially in the case of Arnold v. Maynard [Case No. 561], and Hutchins v. Taylor [Id. 6,953]. In these cases, it was expressly decided that the words "in contemplation of bankruptcy," in the act, were not limited to, and did not mean the contemplation on the part of the bankrupt of committing an act of bankruptcy within the terms of the act, for which his

creditors might proceed against him in invitum, or his own contemplation of voluntarily taking the benefit of the act; but that they properly meant the contemplation of a state of bankruptcy, or known insolvency and inability to carry on his business, and a stoppage of his business. In other words, that he contemplated a breaking up and failure and stoppage of his trade or business, and thus to become, in the sense of the old law, a bankrupt, or one whose trade and business is broken up, his counter or table being, in a figurative sense, bankus-ruptus. 2 Bl. Comm. 471, note e. In addition to the English cases cited in suport of this doctrine in the case of Arnold v. Maynard [supra], I might add the more recent case of Gibson v. Muskett, 4 Man. & G. 160, where Lord Chief Justice Tindal said, "Then the question is, whether this was not money paid in contemplation of bankruptcy, that is, under such circumstances that any prudent man, taking a reasonable view of his situation and the surrounding circumstances at the time, might fairly expect bankruptcy to follow." But I did not found myself on the cases of Arnold v. Maynard and Hutchins v. Taylor [supra], nor do I in the present case found myself, upon the construction of the words, as applied to the English bankrupt statute, but upon their true meaning and objects as used in our own act of 1841, c. 9. Reed must be presumed to have known the natural consequences of his acts in making these conveyances. He could not but have known, that these conveyances, transferring the bulk of his property, did give a preference to Godfrey, which was a fraud upon the bankrupt act, entitling his other creditors to proceed against him therefor in invitum, under the first section of the act. It was an attempt, on his own part, to divide his property among his creditors in a manner prohibited by the bankrupt act, at the very moment when he was about to fail in business, and when he knew that he must by those very conveyances break up and stop his whole trade and means of carrying it on. Nay, the present case demonstrates that he must at the time have had it in contemplation to take the benefit of the bankrupt act, as a voluntary bankrupt; for on the same day, and at most at a few hours after he had made these conveyances, he actually signed and swore to a petition to be filed for the benefit of the act, and that petition was immediately proceeded in, and he has been since declared a bankrupt accordingly. Such acts cannot be overcome or gainsaid by any declarations,—even if Reed had made them,—that he did not, at the moment of executing these conveyances, contemplate taking the benefit of the bankrupt act; but that it was an after-thought. The law will not tolerate such evasions of its obligations, nor permit any man to set up his own private and secret intentions to subvert the just conclusions to be drawn from his overt acts and notorious embarrassments, and stoppage

of his business. The language of Lord Ellenborough in Thornton v. Hargreaves, 7 East, 544, 547, is very significant upon this subject; and in its circumstances it approaches very nearly to the present. See, also, Newton v. Chanter, Id. 138, 143. It would make no difference in the present case, that Godfrey was not aware, that the conveyances were made with an intention to give him an unlawful preference over the other creditors, and in contemplation of bankruptcy; for the act makes such conveyances under such circumstances utterly void, whether the grantee has such knowledge or not. But, in fact, it is not susceptible of any reasonable doubt, that Godfrey at the time was aware of the desperate circumstances of Reed, and he could not but know, that these conveyances, embracing the bulk of his property, necessarily amounted to a failure and stoppage in his business, and reduced him to a state of positive and immediate inability to pay his other debts. Without, therefore, going farther into the details of the case, it appears to me that the conveyances to Godfrey were fraudulent in the sense of the bankrupt act of 1841, having been made in contemplation of bankruptcy, and with intent to give Godfrey a preference over the other creditors.

In the next place, how stands the case as to the Cohannet Bank, upon the transfer to them, on the 21st of March, 1842, by Godfrey? It is suggested, that they are bona fide purchasers, without notice of the invalidity of the conveyances to Godfrey. Now, the answer of the bank does, in part, deny that at the time when the transfer was made to the bank by Godfrey, the bank knew, that the deed of conveyance of the same property by Reed to Godfrey was given in contemplation of bankruptcy, and to give Godfrey a preference over other creditors. But I do not find, that the bank denies, that at the time, that the transfer was so made to the bank, they did not know, that Reed had actually failed in business, and stopped payment, and broken up his business, and that the property therein stated was his whole stock in trade. Indeed, I should infer, that the bank must well have known all these facts, for the transfer was made to the bank solely, as the deed shows, as security for certain notes of Reed, indorsed by Godfrey; so that the apparent object was to get security for the payment of the notes of Reed, and not for any debts of Godfrey, due from him personally. If so, the bank was certainly put upon inquiry, and was bound to inquire into and to ascertain the true nature of the transaction between Reed and Godfrey.

And this leads me to remark, that the bank does not stand within the predicament of being a bona fide purchaser, for a valuable consideration, without notice, in the sense of the rule upon this subject. The bank did not pay any consideration therefor, nor did it surrender any securities, or release any debt due, either from Reed or Godfrey, to it. The transfer from Godfrey was a simple collateral security, taken as additional security, for the old indebtment and liability of the parties to the notes described in the instrument of transfer. It is true, that, as between Godfrey, and Reed, and the bank, the latter was a debtor for value, and the transfer was valid. But the protection is not given by the rules of law, to a party in such a predicament merely. He must not only have had no notice, but he must have paid a consideration at the time of the transfer, either in money, or other property, or by a surrender of existing debts or securities, held for the debts and liabilities. See Story, Eq. Pl. §§ 604a, 662, 805; Boone v. Chiles, 10 Pet. [35 U. S.] 177, 210–212; Stanhope v. Earl Verney, 2 Eden, 81; Mr. Butler's note to Co. Litt. 290–296, note 1, § 13; Willoughby v. Willoughby, 1 Term R. 763, 767; Maundrell v. Maundrell, 10 Ves. 246, 261. But here the bank has merely possessed itself of the property transferred, as auxiliary security for the old debts and liabilities. It has paid or given no new consideration upon the faith of it. It is, therefore, in truth no purchaser for value in the sense of the rule. Mr. Chancellor Walworth in Dickerson v. Tillinghast, 4 Paige, 215, seems to have gone somewhat farther, and to have held, that a transfer to a grantee in payment of a pre-existing debt, without giving up any security, or divesting himself of any right, or placing himself in a worse situation than he was in before, of an estate, upon which there was a prior unrecorded mortgage, of which the grantee had no notice, did not make him a purchaser, in the sense of the rule, for a valuable consideration; but that there must be some new consideration, in order to entitle him to a preference over the prior mortgagee. I do not say, that I am prepared to go quite to that length, seeing, that by securing the estate as payment, the pre-existing debt is surrendered and extinguished thereby. But here, there was no such surrender or extinguishment or payment; and the general principle adopted by the learned chancellor is certainly correct, that there must be some new consideration, moving between the parties, and not merely a new security given for the old debts or liabilities, without any surrender or extinguishment of the old debts and liabilities, or the old securities therefor. See, also, Coddington v. Bay, 20 Johns. 637. So that upon this ground alone the title of the bank would fail. The case of Swift v. Tysen, 16 Pet. [41 U. S.] 1, does not apply. In the first place, there the bill was taken in payment or discharge of a pre-existing debt. In the next place, it was a case arising upon negotiable paper, and who was to be deemed a bona fide holder thereof, to whom equities between other parties should not apply. Such a case is not necessarily governed by the same considerations, as those applicable to purchasers of

real or personal property, under the rule adopted by courts of equity for their protection.

But there is another ground, independent of this, and quite decisive against the bank. It is this, that the very deed of transfer, by its terms, purports to "sell, assign, transfer, and set over" to the bank, all the right, title, and interest of Godfrey, in and to the stock in the store, derived from the mortgage of Reed; and it contains no covenants whatsoever, as to the title or otherwise. So that it is a mere naked conveyance to the bank, of the very right, title, and interest, which Godfrey derived from the mortgage of Reed, and nothing more. The bank, therefore, took nothing but the "right, title, and interest," of Godfrey, subject to all its original infirmities, and can now claim under it nothing, which Godfrey himself could not claim against the assignee. This view of the matter ends the case, so far as respects the title of the bank under this deed.

The same objections, for the most part, apply to the deeds executed by Godfrey to the Cohannet Bank, and others, on the 26th of May, 1842. Each of them is a conveyance of all the "right, title, and interest" of Godfrey, derived under the mortgage deeds executed to him by Reed, on the preceding 19th day of March. There is this farther most important fact, that Reed had signed a petition on the same day (19th of March), for the benefit of the bankrupt act, that it was filed and acted on in the district court forthwith, and that Reed has under the proceedings been declared a bankrupt. The exact time when he was declared a bankrupt, does not appear; but I presume it was before the execution of those deeds, on the 26th of May. Now the pendency of these proceedings in the district court, at the time, would be constructive notice thereof, to all the grantees under those deeds. But they admit, that they had in fact actual notice thereof, at the time of the execution of the deeds. They were, therefore, put upon inquiry, and bound to know, that the very deeds under which Godfrey claimed, and the very "right, title, and interest," which he conveyed to them, were executed on the same day, that he signed his petition for the benefit of the bankrupt act. Under such circumstances, it is impossible for them justly to insist upon the defence, that the conveyances executed by Reed, on the eve of bankruptcy, conveying the bulk of all his property, real, and personal, to a single creditor, were not acts done in contemplation of bankruptcy, and with a view to give that creditor a preference over all others. It is true, that they surrendered their attachments upon God-

frey's property, and made other arrangements, by which the Cohannet Bank agreed to put the whole rights acquired by it, in the stock of Reed, by the deed of the 21st of March, into a common fund, and share, pro rata, with the other creditors, who were parties to those conveyances. But still, they bargained only for all the "right, title, and interest" of Godfrey, derived under the deed from Reed. Godfrey, by the same deed, assigned to the same grantee all his claims against William Reed the bankrupt, and also against John Reed, and "against the estates, or assignees, of the said William, and John." The surrender of their attachments might be a valuable consideration for the deeds of Godfrey to them, under certain circumstances, but not under circumstances like the present, where they had notice of the time and circumstances of the bankruptcy of Reed. And besides; they purchased, if, indeed, they could be called purchasers at all, only the "right, title, and interest" of Godfrey, in the premises, with all the infirmities, and subject to all the equities, belonging thereto. So that the case, as to these grantees, also falls back upon the validity of the conveyances to Godfrey by Reed, and must be treated as if Godfrey now claimed the property under those conveyances.

I am, therefore, of opinion, that it ought to be declared, that the said deeds made by Reed to Godfrey, and by Godfrey to the other defendants, ought to be declared void, as against the assignee of Reed; that the said Cohannet Bank, and the other defendants, be decreed to execute a release of all their right, title, and interest in, and to the real estate of the said Reed described therein, in such form as shall be settled by the master; and that the said defendants be required to account for, and pay over to the said assignee, the rents, and profits thereof, received by them; and also, that the said Cohannet Bank, and the other defendants, be required to account for, and pay over to the said assignee, all the proceeds of the said stock in trade, conveyed by the said Reed, to the said Godfrey, by the deed of the 19th of March, 1842, so far as the same shall have been sold, or otherwise disposed of, by the said bank and the other defendants respectively. And that it be referred to the same master, to take an account thereof, and to report to the court upon all the matters aforesaid. And all further orders are reserved until the coming in of the master's report, or the further order of the court in the premises.