# WARNER M. RASIN, ASSIGNEE OF THOMAS MORRELL AND C. CUYLER CAMPBELL, BANKRUPTS, APPELLANT, v. EDWARD H. AMMIDOWN, JONAS H. LANE, ALBERT D. SMITH AND WILLIAM H. KLAPP, RESPONDENTS.

*Bankrupt Act, § 5128 — what transactions void under — effect of amendment in 1874 on prior transactions.*

In the early part of November, 1873, the defendants held an over-due and protested note, given to them by plaintiff's assignors, retail traders in Philadelphia, for goods sold to them. The makers promised to pay the same November, twenty-first, and on their failure to do so, the defendants put it in the hands of an attorney at Philadelphia for collection. The makers then saw the defendants, and it was agreed that the note should be extended ; and to secure its payment, a package of lace, worth $3,000, was taken from their store and placed in the hands of another dealer, the proceeds of its sale to be applied upon the note ; the makers saying they had made a similar assignment to secure another and principal creditor. A few days after this was done, the firm in Philadelphia were thrown into bankruptcy. *Held,* that the transaction was void under section 5128 of the Bankrupt Act.

*Semble,* that a transaction void under said section prior to its amendment in 1874, and taking place prior thereto, was not rendered valid by such amendment, although all the conditions required by the amendatory act to make it void did not exist.

APPEAL from a judgment dismissing the complaint, entered upon the trial of this action by the court without a jury.

*Davies & Whitehead,* for the appellant.

*Martin & Smith,* for the respondents.

POTTER, J.:

This is an appeal from a judgment rendered upon a trial at Special Term dismissing the complaint and for costs. The action was in equity by the plaintiff, assignee in bankruptcy, to set aside a transfer of personal property by the bankrupts to the defendants, who were creditors of the bankrupts, and for an injunction and an accounting for the proceeds of any of the property which had been sold by the defendants. The grounds for such relief are that

such transfer was made in violation of the provisions of section 5128 of the bankrupt law of the United States. This section 5128, as it now stands, is an amendment of the original thirty-fifth section of the Bankrupt Act. The complaint is manifestly predicated upon the amendatory section, 5128, though the transaction complained of took place on or about the 12th of December, 1873. A point is made by the respondent on this appeal, that the case is to be decided by the law as found in section 5128, which took its present form in 1874. We doubt the correctness of that proposition. If the transaction was declared void by the law as it existed at the date of the transaction, I apprehend it remains a void transaction, notwithstanding the amendatory act may super-add other conditions requisite to make such transactions void, unless the amendatory act expressly validates the void transaction, and especially so, when the original transaction was void at the common law, as well as by statute, when the transaction occurred. But, however that may be, it is of no present interest, for we are constrained, after a careful examination of the evidence in this case and the decided cases involving the construction of section 5128, that the transaction was void and the judgment should be reversed.

Section 5128, as applied to the transaction in question, reads as follows: " If any person, being an insolvent, or in contemplation of insolvency within four months before the filing of the petition by or against him, with a view to give a preference to any creditor, * * * makes any payment, pledge, assignment, transfer or conveyance of any part of his property either directly or indirectly, * * * the person receiving such payment, pledge, assignment, transfer or conveyance, or to be benefited thereby, having reasonable cause to believe such person is insolvent, and knowing that such * * * payment, pledge, assignment or conveyance is made in fraud of the provisions of this Title, the same shall be void, and the assignee may recover the property or the value of it from the person so receiving it. or so to be benefited." Then follows a qualification permitting a security for a loan made in good faith, and taken at the time of making the loan. There were but two witnesses sworn upon the trial — one of the bankrupts and one of the creditors. They do not differ as to the character of the transac-

tion itself, but differ, in material respects, in the facts and circumstances surrounding the transaction.

If the evidence of the bankrupt Campbell is to be believed, there can be no question. The transaction is clearly, if not confessedly, void. The court below evidently based its findings upon the evidence of the defendant Ammidown. Whether the court should have done so, I will not stop to discuss; for assuming the facts to have been as stated by Ammidown himself, and such as is shown otherwise than by him, we think the transaction is forbidden and declared void by section 5128. An analysis of the section in question will show that these four conditions must exist to render the transaction therein specified void: First. The person making the transfer must be insolvent, or contemplate insolvency. Second. The transfer must be made within a certain period of time, and with a *view to giving a preference.* Third. The person receiving such transfer, or to be benefited by it, must have reasonable cause to believe such person is insolvent; and Fourth. Must know that such transfer was made in fraud of the provisions of the Bankrupt Act.

Now, what were the facts out of which the transaction in question sprung? The bankrupts were, in the forepart of November, 1873, indebted to the defendants, for a bill of goods bought previously, in the sum of twenty-six or twenty-seven hundred dollars. That indebtedness was represented by a note made by the bankrupts on time, and the note had been protested and remained unpaid at the date of this transfer, which was about the 12th of December, 1873. The debt was for a bill of goods sold by defendants, who were jobbers in New York, to the bankrupts, who were retail traders in such goods in Philadelphia. The bankrupts wrote the defendants they would send a check for the bill upon the twenty-first November; but no check was sent or other payment made. The defendants placed the note in the hands of an attorney at Philadelphia, and the bankrupts were notified by the attorney that legal proceedings would be commenced upon the note. One of the bankrupts went to New York and had an interview with the defendant Ammidown, who was a witness, and the result of that interview was, that the time to pay the note was extended, and as security for its payment a package of laces, a part of the bank-

rupt's goods kept for sale, and valued at $3,000, was removed from the bankrupts' store to the store of one Carson, in the same city, who was to sell the same, and the proceeds were to be applied in payment of this debt. The defendants were informed by the bankrupts, at the time of the transaction, that they had made a similar arrangement to secure another and principal creditor. The bankrupt testifies his firm was, at the time of this transaction, insolvent, and his statement is corroborated by the fact that within a half a dozen days thereafter a petition in bankruptcy was filed against his firm, and the defendants were applied to to sign articles of composition.

There are other minor facts going to establish the propositions above stated, but I deem those sufficient to establish them, and will not specify any more. Were the debtors insolvent at the time of the transaction? That is beyond dispute, and that they knew it. Was the transfer made with a view of giving preference to defendants as creditors? The debtor was insolvent. They had not property sufficient to pay their debts, and they placed a part of their property, and sufficient in value to pay this debt due the defendants, in the hands of another trader to sell and apply all of the proceeds upon the defendants' debt. A similar arrangement was made with one other creditor, but to no others to whom there was due $15,000 from the bankrupts. "With a view to give preference," must be construed so as to include an intent to give one or more creditors an advantage over others, in respect of payment or security. (*Forbes* v. *Howe*, 102 Mass., 427; *In re George and Proctor*, Lowell, 409.) Every one is presumed to intend what is the necessary and unavoidable consequences of his acts. (*Sawyer* v. *Turpin*, 5 id., 339; *Morse* v. *Godfrey*, 3 Story, 364; *Toof* v. *Martin*, 13 Wall., 40.) The transfer by a debtor, who is insolvent and aware of his condition, of his property or a considerable portion of it to a creditor as a security for a pre-existing debt, without making any provision for an equal distribution of its proceeds to all his creditors, operates as a preference to such transferee, and must be taken as *prima facie* evidence that a preference was intended. (*Wager* v. *Hall*, 16 Wall. [U. S.[, 584.) Had the defendants reasonable cause to believe these debtors were insolvent? The question is

not, as some of the questions and evidence upon the trial would seem to indicate, whether the defendants believed these debtors were insolvent. It is not what the defendants believed, but what they had reasonable cause to believe. What reasonable cause of belief in relation to the debtors' insolvency had they? As we have seen, the parties to the transfer were merchants and traders. The note had lain under protest for a month or so. The debtors' promise to pay it had not been performed, and it had been placed in the hands of an attorney who threatened to take legal proceedings upon it, and the debtors turned over property to be sold and the proceeds applied towards its payment, and they had done a similar thing by another heavy creditor. Are these not reasonable causes to induce a belief of insolvency in the mind of an intelligent and prudent business man? Facts which would lead prudent business men to the conclusion that the debtor cannot meet his obligations, as they mature in the ordinary course of business, are reasonable causes for the belief that such debtor is insolvent. (*Toof* v. *Martin*, 13 Wall., 40.) Insolvency, when used in this statute in reference to traders, means inability to pay debts as they fall due in the ordinary course of business. (*Buchanan* v. *Smith*, 16 Wall., 277; *Wager* v. *Hall*, 16 Wall., 584; *The Merchants' National Bank of Cincinnati* v. *Cook*, U. S. Court Weekly Digest., vol. 5, 314.) The cases upon this point go much farther than to hold that facts, such as these, are reasonable causes for belief of insolvency. They hold that whatever fairly puts a party upon inquiry is sufficient notice, where the means of knowledge are at hand; and if a party under such circumstances omits to inquire, and proceeds to receive the transfer, he is chargeable with a knowledge of all the facts, which by a proper inquiry he might have ascertained. (*Buchanan* v. *Smith*, 8 Blatch., 153; and 16 Wall., 277.)

The character of the transaction itself is most significant. If the defendants had no reasonable cause for believing the insolvency, why did they not extend the payment, as they did on the original sale of the goods, without security? If solvent, why take a portion of the debtors' stock of goods to another place to be sold, instead of allowing the debtors to sell them in the ordinary

way, and receive the avails of the sales and pay to all creditors alike? Why stipulate that the proceeds of the sale of these goods should apply upon this debt, if the debtors were solvent, and so able to pay all their creditors? Why remove the goods and place them in the hands of some one else to sell, while it was the business of these debtors to sell those goods? It is obvious that these defendants believed, as they had reasonable cause to believe, that the debtors had not property enough to pay all their creditors, and that some of them might endeavor to levy upon those which were removed, if they remained in the debtors' possession. The transaction is an extraordinary one, and never happens to many business men without a cause. It only remains to inquire whether the defendants knew the transfer was made in fraud of the provisions of the Bankrupt Act. This conclusion follows almost necessarily, from the facts in the case. This act was designed to make a *pro rata* distribution of an insolvent's assets among his creditors. It forbids any preference after the filing of the petition in bankruptcy, and authorizes the assignee to commence the proper actions to set them aside, and also preferences made under certain circumstances two or four months prior to the filing of the petition, even though consummated through legal proceedings and the judgment of the highest State or federal court rendered in the due' course of judicial procedure. The defendants are presumed to know the law. The arrangement resorted to to accomplish the preference was out of the usual and ordinary course of the debtors' business. That fact alone was *prima facie* evidence of fraud upon the act, and cast the burden of showing the non-existence of some of the facts above stated upon defendants. (U. S. R. S., § 5130.) Indeed, it is doubtful whether the legal title to the case of laces was transferred at all to the defendants, and whether the title was not transferred to the assignee by virtue of the assignment in bankruptcy. The debtors, themselves, had the right of sale, as well as purchase, of the goods after the removal of them. Such a transaction would be clearly void at common law, as a fraud upon creditors, and would not stand against a seizure by creditors with an attachment or judgment.

The judgment should be set aside and new trial ordered, with costs to abide the event.

INGALLS, P. J., concurred.

Present — INGALLS, P. J., DANIELS and POTTER, JJ.

Judgment set aside; new trial ordered; costs to abide event.